625 P.2d 915

**The STATE of Arizona, Appellee,**

v.

**Curtis MORROW, Appellant.**

**2 CA–CR 2027.**

Court of Appeals of Arizona, Division 1.

Sept. 18, 1980.

Rehearing Denied Nov. 5, 1980.

Review Granted Dec. 2, 1980.

---

area at Tucson International Airport constituted an unreasonable search in violation of his rights under the Fourth Amendment.

2. There was no probable cause or reasonable suspicion to seize Morrow and search his luggage.

3. Search of Morrow's attache case was unlawful. Inasmuch as we agree with his first and third contentions we do not consider his second. The judgment is reversed.

According to the testimony at the suppression hearing, a U.S. Customs Service dog trained to detect narcotics was taken to the area where baggage from a domestic flight is placed on a moving belt for conveyance into the baggage claim area. The dog was taken there by its handler as a training exercise because of the infrequent opportunities to reward the dog while working with international baggage. The practice sessions with domestic baggage occurred approximately three times each week. The handler did not get permission from the airlines for the training exercises and did not know whether permission had been given to anyone else.

On June 5, 1979, the dog reacted to a softsided brown suitcase, indicating the presence of narcotics. Law enforcement officers then waited in the public claim area until the suitcase was claimed by Morrow, who was carrying an attache case. As soon as he picked up the suitcase a federal officer approached him and told him that a narcotics detection dog had indicated there were drugs in his bag. The officer testified:

A. I then asked him if these were his bags and he said yes.

Q. Did you say bags plural?

A. Yes.

Q. And he indicated yes?

A. Yes, he said that they were.

Q. And then what happened?

A. I then asked him if he would consent to showing us what is inside the bags. I told him that he didn't have to do this.

Q. And how many bags were you referring to?

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Jessica Gifford, Asst. Attys. Gen., Phoenix, for appellee.

Roger S. Auerbach, Tucson, for appellant.

## OPINION

RICHMOND, Judge.

Following denial of his motion to suppress, appellant Curtis Morrow was convicted of possession for sale of cocaine of a value of less than $250, a felony, and of unlawful possession of marijuana, a misdemeanor. The case was submitted on transcripts of the grand jury proceedings and suppression hearing, police reports, and various stipulations unrelated to this appeal.[1] Morrow challenges the denial of his motion to suppress on three grounds:

1. Use of a trained narcotics dog to detect contraband in the baggage unloading

1. The motion to suppress was decided by Judge Harry Gin and the resulting record submitted to Judge Richard N. Roylston for determination of guilt.

A. The both of them.

Q. What do you mean by both bags?

A. The big soft-sided bag and the hand-carried bag, attache case.

Q. And what did he say?

A. He said, "Fine." He said, "There is no drugs in these bags."
And he said, "Let's open them up here."
And I told him, "No, it is a crowded area, let's go someplace where we could have a little privacy."
And he said, "Fine."
So we went outside the terminal building, it is approximately maybe thirty or forty feet, and he put the bags on the baggage belt.

Morrow opened the suitcase, pulled out a brown shaving kit and opened it. Inside the shaving kit the officer saw a clear plastic bag containing marijuana and pills. Morrow was then escorted to an office where he was taken into custody and searched. When asked to produce identification, he opened the attache case and removed a checkbook, which he then hastily replaced. He locked the case and told the officers he knew nothing about it and was mailing it for a friend. He was asked what he meant and repeated the statements. One of the officers then asked him to reproduce the checkbook. Morrow raised his hands in the air and backed away from the case, repeating that it wasn't his. The officers forced the case open with a screwdriver. Inside they found a sealed envelope containing cocaine.

The state relies on three opinions of this court as authority for its position that use of a dog for narcotics detection, in an area where law enforcement authorities have a right to be present, does not constitute a search.[2] The reliance is misplaced. There is no evidence the officers were authorized to be in the area where the random sniffing operation took place; the testimony was to the contrary. In that respect the case is similar to *People v. Williams*, 51 Cal.App.3d 346, 124 Cal.Rptr. 253 (1975), upholding the suppression of marijuana detected by a trained dog in a search of luggage in the San Diego International Airport baggage area. The court upheld a trial court finding that for the purpose of the search the officers were trespassers. Since the testimony is undisputed on that point in this case, the physical evidence should have been suppressed.

The warrantless search of the attache case when it was solely and exclusively in the control of the police is a further ground for suppression of the cocaine. *State v. Crutchfield*, 123 Ariz. 570, 601 P.2d 333 (1979). In view of Morrow's refusal to unlock the case upon request, the state's argument that he never withdrew his initial consent to search it borders on the frivolous. Nor does his disclaimer of ownership constitute abandonment depriving him of standing to raise the unlawful search issue. The evidence viewed most favorably to the trial court's ruling establishes that Morrow was no less than a bailee "for a friend." *State v. Walker*, 119 Ariz. 121, 579 P.2d 1091 (1978), is inapposite. The defendant in *Walker* disclaimed any custodial interest in the suitcases that were searched.

The judgment is reversed with instructions to dismiss the indictment.

HATHAWAY, C. J., and HOWARD, J., concur.

2. In each of those cases there was reason to suspect the presence of contraband before the dogs were called into service. See *State v. 1969 Volkswagon Bus*, 120 Ariz. 365, 586 P.2d 210 (App.1978); *State v. Martinez*, 26 Ariz. App. 210, 547 P.2d 62, aff'd. 113 Ariz. 345, 554 P.2d 1272 (1976); *State v. Quatsling*, 24 Ariz. App. 105, 536 P.2d 226 (1975). As pointed out by the California Court of Appeal, Fifth District, in *People v. Evans*, 65 Cal.App.3d 924, 134 Cal.Rptr. 436 (1977), the line of federal cases on which the state relies as upholding the use of marijuana-sniffing dogs does not authorize a general exploratory search. In each of those cases use of the dogs was in response to particular information supplied by informants or the surrounding circumstances. See *United States v. Solis*, 536 F.2d 880 (9th Cir. 1976); *United States v. Bronstein*, 521 F.2d 459 (2d Cir. 1975), cert. denied, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976). In that respect they are consistent with the Arizona cases. We do not decide the case on that ground, however.